**No. 26-11281**

**IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

CK TRAN,
*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of Alabama
Case No. 4:23-cr-00383-CLM-NAD-8

# PRINCIPAL BRIEF OF APPELLANT CK TRAN

LISA M. IVEY
Attorney for CK Tran

STUBBS, SILLS & FRYE, P.C.
1724 South Quintard Avenue
Post Office Box 2023
Anniston, Alabama 36202
(256) 835-5050
lisa@stubbssillsfrye.com

## STATEMENT REGARDING ORAL ARGUMENT

Tran respectfully defers to this Court's sound discretion regarding whether oral argument would be helpful to its decisional process in this matter.

## TABLE OF CONTENTS

**Page #**


STATEMENT REGARDING ORAL ARGUMENT............................i

TABLE OF CONTENTS.......................................................ii

TABLE OF CITATIONS.....................................................iv

I. Cases.......................................................................iv

II. Statutes....................................................................v

III. Rules.......................................................................vi

STATEMENT OF JURISDICTION........................................vii

STATEMENT OF THE ISSUES..............................................1

STATEMENT OF THE CASE..................................................1

I. COURSE OF THE PROCEEDINGS.................................1

II. STATEMENT OF THE FACTS......................................14

III. STANDARD OF REVIEW............................................14

SUMMARY OF THE ARGUMENT.........................................17

ARGUMENT.......................................................................19

I. The district court erred by failing to take any evidence to establish the amount of loss and number of victims when those sentencing guidelines enhancements were in dispute and by drawing unsupported inferences from the arguments and representations presented to it.............................19

II. The district court imposed a substantively unreasonable sentence that was greater than necessary to achieve the sentencing purposes identified in 18 U.S.C. § 3553(a).......27

CONCLUSION.......................................................................31

CERTIFICATE OF COMPLIANCE...............................................32

CERTIFICATE OF SERVICE.....................................................33

## TABLE OF CITATIONS

**Page #**

Cases

Gall v. United States,
552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007) .................. 16, 27

United States v. Agis-Meza,
99 F.3d 1052 (11th Cir. 1996)............................................................20

United States v. Amedeo,
487 F.3d 823 (11th Cir. 2007)............................................................31

United States v. Barrington,
648 F.3d 1178 (11th Cir. 2011).................................................... 14, 15

United States v. Bradley,
644 F.3d 1213 (11th Cir. 2011).................................................... 18, 24

United States v. Butler,
39 F.4th 1349 (11th Cir. 2022) .................................................... 16, 28

United States v. Campbell,
765 F.3d 1291 (11th Cir. 2014)..........................................................26

United States v. Cubero,
754 F.3d 888 (11th Cir. 2014)............................................................16

United States v. Ford,
784 F.3d 1386 (11th Cir. 2015).................................................... 14, 19

United States v. Irey,
612 F.3d 1160 (11th Cir. 2010)..........................................................28

United States v. Lawrence,
47 F.3d 1559 (11th Cir. 1995).......................................... 19, 22, 23, 27

United States v. Martinez,
964 F.3d 1329 (11th Cir. 2020)..........................................................15

United States v. Owanikin,
769 F. App'x 896 (11th Cir. 2019) .......................................... 17, 22, 24

United States v. Patrick,
983 F.2d 206 (11th Cir. 1993).............................................................20

United States v. Robertson,
493 F.3d 1322 (11th Cir. 2007)......................................... 15, 17, 19, 24

United States v. Rodriguez,
732 F.3d 1299 (11th Cir. 2013)........................ 14, 17, 19, 20, 22, 23, 24

United States v. Rosales-Bruno,
789 F.3d 1249 (11th Cir. 2015).................................................... 16, 27

United States v. Sepulveda,
115 F.3d 882 (11th Cir. 1997)...................................................... 26, 27

United States v. Shaw,
560 F.3d 1230 (11th Cir. 2009)...........................................................16

United States v. Steiger,
107 F.4th 1315 (11th Cir. 2024) .........................................................15

United States v. Trailer,
827 F.3d 933 (11th Cir. 2016).............................................................14

United States v. Utsick,
45 F.4th 1325 (11th Cir. 2022) ...........................................................15

United States v. Vandergrift,
754 F.3d 1303 (11th Cir. 2014)...........................................................19

United States v. Washington,
714 F.3d 1358 (11th Cir. 2013).............................................. 20, 22, 23

Statutes

18 U.S.C. § 1341 ..................................................................................1

18 U.S.C. § 1343 ..................................................................................1

18 U.S.C. § 1349 .......... 1

18 U.S.C. § 3231 .......... vii

18 U.S.C. § 3553(a) .......... iii, 13, 14, 16, 18, 27, 28, 31

18 U.S.C. § 3742(a) .......... vii

28 U.S.C. § 1291 .......... vii

Rules

11th Cir. R. 28-1(i) .......... 13

11th Cir. R. 32-4 .......... 32

Fed. R. App. P. 32(a)(7)(B) .......... 32

Fed. R. App. P. 32(g) .......... 32

USSG § 2B1.1(b)(1)(I) .......... 4

USSG § 2B1.1(b)(2)(A)(i) .......... 4

USSG § 2B1.1(b)(10)(C) .......... 4

USSG § 3B1.1 .......... 3

USSG § 5K1.1 .......... 7, 13

## STATEMENT OF JURISDICTION

CK Tran appeals from a 21-month sentence imposed by the United States District Court for the Northern District of Alabama. Tran was sentenced on April 16, 2026 (Doc. 266) and filed a notice of appeal on April 17, 2026 (Doc. 262).

The district court exercised jurisdiction pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## STATEMENT OF THE ISSUES

I. Whether the district court erred by failing to take any evidence on disputed guidelines enhancements before using them to enhance Tran's sentence and by drawing unsupported inferences from arguments and representations at sentencing.

II. Whether the district court imposed a substantively unreasonable sentence.

## STATEMENT OF THE CASE

### I. COURSE OF THE PROCEEDINGS

In October 2023, a federal grand jury returned a one-count indictment against Aiman Akram Kaif, Damion Wayne Scarlett, Dhruv Gargi, David James Park, Andre Johannes Ischler Simonet, Nicholas John Caruso, CK Tran, and Tyree Samuel Tinsley, charging them with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1349. (See Doc. 1.) In broad strokes, the indictment alleged that the defendants were part of a group known as "Noir's Organization" that used Telegram (a cloud-based internet messaging service) and other means to commit "refund fraud" against various retailers. (See Doc. 1.)

On October 21, 2024, Tran pled guilty to the indictment pursuant to a plea agreement. (Doc. 179.)[1]

In preparing the Presentence Investigation Report ("PSR"), the probation officer described the offense conduct based on stipulated facts and other information. (Doc. 265, PSR, ¶ 14.) The PSR provided an "overview" of Noir's refund fraud scheme and organizational structure (PSR, ¶¶ 25-29), the "concierge refund service" that was operated from approximately July 20, 2020 until June 1, 2022 (PSR, ¶¶ 30-36), the "resale operation" (PSR, ¶¶ 37-48), the "travel service" operation (PSR, ¶¶ 49-50), and the "mentorship and VIP programs" (PSR, ¶ 51).

As to Tran's involvement, the PSR stated that Tran controlled a Telegram persona known as "Radiant" and that he operated his own refunding service called "Radiant's Elite Refunds" on Telegram, which he eventually closed. (PSR, ¶ 52.) Tran operated a Telegram channel named "Radiance Market" which, the PSR said, "was a general market where

[1] Although Tran's plea agreement contained waiver provisions, including a waiver of the right to appeal his sentence except under limited circumstances (see Doc. 179, at 15), the government has represented to the undersigned that it does not intend to enforce the waiver as to any sentencing issues Tran might raise in this appeal.

users advertised an assortment of services, including fraud services.”

(PSR, ¶ 52.)

The PSR also stated:

> Tran conspired with Noir and Noir’s Organization. On several occasions during the charged conspiracy, Tran provided advice to Noir’s Organization about the status of his refund fraud project, including marketing insight about how to structure its operations. Tran was never paid by Noir’s Organization for his advice, and Tran did not conduct operations for Noir’s Organization. He was a consultant rather than an employee of the group. Tran was given special access to the Telegram channel “Noir’s Market” by Noir. This channel was used by Noir’s organization to advertise the conspiracy. Links to the Google Forms to receive refund fraud orders were often posted in the channel.

(PSR, ¶ 53.)[2]

The PSR also stated:

> The government has indicated that for the purpose of calculating Tran’s sentencing guidelines, the loss associated with the conspiracy is more than $1,500,000 but less than $3,500,000. The parties stipulated that Tran does not qualify for an aggravating role enhancement under USSG § 3B1.1.

(PSR, ¶ 54.)

The PSR applied the November 1, 2024 Guidelines manual, and calculated a base offense level of 7. (PSR, ¶ 59.) The base offense level

[2] This language came from the factual basis for the plea set forth in the plea agreement, to which Tran had stipulated. (See Doc. 179, at 12-13.)

was enhanced by +16 pursuant to USSG § 2B1.1(b)(1)(I) because of the government's stated loss amount of more than $1,500,000.00 and less than $3,500,000.00. (PSR, ¶ 60.) It was enhanced by another +2 because the offense involved 10 or more victims. (PSR, ¶ 61); see also USSG § 2B1.1(b)(2)(A)(i)). A final "sophisticated means" enhancement was added under USSG § 2B1.1(b)(10)(C) (see PSR, ¶ 62), bringing the Adjusted Offense Level to 27 (PSR, ¶ 66). With adjustments for acceptance of responsibility, Tran's Total Offense Level was 22. (PSR, ¶ 70.) With Tran's Criminal History Score of 0, establishing a Criminal History Category of I, the guideline imprisonment range was 41 months to 51 months. (PSR, ¶¶ 74-75, 102.)

Tran filed objections to the PSR, including an objection that his participation in the conspiracy began in November 2021 and not July 2020. (See Doc. 194, ¶ 1.) Tran also objected to the +2 enhancement pursuant to USSG § 2B1.1(b)(2)(A)(i), asserting that the number of victims during his involvement in the conspiracy was less than 10. (See Doc. 194, ¶ 2.) Without this enhancement, Tran's Total Offense Level would have been 20; and the guidelines range would have been 33 to 41 months. (See Doc. 194, ¶ 5.)

Tran also filed a sentencing memorandum. (Doc. 247.) Among other things, Tran argued that he was "the least, or hardly," a culpable actor in the offense, in that his only contribution was occasionally offering advice or insights, and that his communications were "fundamentally" based on "criticisms of Noir and the business model itself." (Doc. 247, at 2.) The sentencing memorandum also noted Tran's youthful age, his traumatic childhood that was a result of complex family dynamics and physical health issues, and his complete lack of criminal history. (Doc. 247, at 2-3.)

The sentencing memorandum also pointed out that a data analysis of Tran's communications with the Noir conspiracy communication logs amounted to only 0.6% of the total message volume, and of those messages, some 85% were "casual banter, trading discussions, or meta-critiques." (Doc. 247, at 3.) Too, Tran's participation was "intermittent and 'burst heavy' " in that Tran was "not present" until January 30, 2022 and even then was a "peripheral critic" who was "entirely absent from the execution, logistics or sifting that defined the fraud." (Doc. 247, at 4.)

Tran requested a non-custodial sentence at the low end of the guidelines, and noted that the guidelines calculation would depend on

the district court's ruling on his objections, which would necessarily include an individualized finding of reasonably foreseeable loss. (Doc. 247, at 4-5.) Tran asserted that the appropriate loss amount would be $37,594.50, corresponding to a starting date of January 21, 2022 and ending on February 12, 2022. (Doc. 247, at 5.)

At the sentencing hearing, Tran added oral objections to his previously filed written objections. (Doc. 286, at 3.) Specifically, Tran objected to the sophisticated-means enhancement. (Doc. 286, at 3.)

The district court then heard argument from the government regarding its methodology of calculating the loss amount. (Doc. 286, at 4.) According to the government, it had compiled a spreadsheet that was a summary of all of the orders processed by Noir over a certain period of time beginning in August of 2021. (See Doc. 286, at 4-5.)

The district court then asked the government what evidence it had that Tran was connected to Noir before August of 2021, as the PSR reflected Tran's involvement beginning in November of 2022. (See Doc. 286, at 5-6.) The government pointed to a series of Telegram messages in March of 2020 where Tran was purportedly representing himself as an "admin" of a Noir chat and other chat groups. (See Doc. 286, at 6.) There

was also a message sent around that same time where Tran told someone that he was looking for a "drop service," which message indicated that Noir had referred Tran to the individual for the potential service, and which message also indicated that Tran and Noir worked together. (See Doc. 286, at 6-7.) Finally, there was one more message around that same time where someone messaged Tran's Radiant account for help with a refund issue with Noir; the message indicated that the individual was attempting to reach out to an "admin" of Noir. (See Doc. 286, at 7.)[3] Tran sent a response to the effect that he had reviewed the chat logs between the individual and Noir and that the individual had messaged Noir too late and was not applicable for a refund. (See Doc. 286, at 15.)

Following discussions regarding a motion that the government had made pursuant to USSG § 5K1.1, the district court asked what contributions Tran had allegedly made to Noir "separate and apart" from what Tran had done for himself on Radiant. (See Doc. 286, at 8-10.) The government argued that Tran had provided advice about Apple's fraud detection systems, which the government characterized as "illustrative"

[3] Screenshots of the messages the government referenced were included in its sentencing memorandum.

of Tran's alleged status as a "consultant" to Noir. (See Doc. 286, at 10-11.) And, the government argued that the loss amount attributable to Tran should run for the full time period of the loss (August 2021 to "the end of the Clickup, which is in 2022"). (Doc. 286, at 11.)

In response, Tran first provided some background information to the district court regarding his motivation for "appearing" on Telegram "in the first place." (Doc. 286, at 12-13.) Tran explained that, between January and March of 2020, he was in a long-term relationship with a woman he believed was the victim of human trafficking, and needed money to help her, which led him to establish himself in a chat room and eventually become an "admin across multiple groups." (Doc. 286, at 13.) Eventually, Tran became a "super admin" of several groups, meaning that he could ban users in multiple groups with one command, rather than having to do so as to individual groups. (Doc. 286, at 14.)

Tran and Noir had also made each other admins in each other's Telegram groups, even groups that had nothing to do with fraud. (Doc. 286, at 27.) But, Noir did have a pattern of placing Tran in Noir's Telegram groups without Tran's consent. (Doc. 286, at 19-20. See also Doc. 264-7, at 1.) Tran said that his activity in the groups that Noir placed

him in had been limited, and he "did not say anything unless Noir asked," at which time Tran would give "very general feedback." (Doc. 286, at 20.) When the district court asked if Tran understood that he (Tran) was committing criminal refund fraud and "assisting someone else to do the same thing better," Tran again stated that his responses were not to help Noir, but to criticize his business acumen. (See Doc. 286, at 21-22.)

In January of 2022, chat log records of a group known as the "Anime Fan Club," which consisted of Tran, Noir, and all the members of Noir's organization, contained messages where Tran was criticizing Noir's business model, among other things. (Doc. 286, at 32-34. See also Doc. 264-8, at 1-4.) It was in this chat that Tran first provided Noir any practical advice. (Doc. 286, at 34.) The first time Tran provided specific advice to Noir on how to provide a refund service was February 4, 2022, in regard to Apple. (Doc. 286, at 27-28, 34. See also Doc. 264-2, at 1.) On March 30, 2022, Tran provided specific advice as to Samsung. (Doc. 286, at 28, 34. See also Doc. 264-2, at 2.)

Tran did acknowledge that he used his status as an admin of Noir, AIO, Moonlight, and KiKi to "leverage" his reputation for his Radiant business. (Doc. 286, at 23.) He also acknowledged that he used "vouching"

links, one of which was associated with a Noir account, that users could click on to see that he had actually provided services, but explained that such "vouching" links did not represent a partnership with the vouching entity. (See Doc. 286, at 23-26.)

Given all of this context, Tran also explained that the March 23, 2020 message from the individual who wanted to reach an "admin" of Noir, and Tran's response, was prompted by his "super admin" status across several Telegram groups, and that after he saw the chat log between Noir and the individual, Tran told the individual to address his problem with Noir because it didn't have anything to do with Tran. (Doc. 286, at 17, 37.) Tran said that the individual probably believed that he should contact Tran because of Tran's "super admin" status, because Tran was the most responsive admin, and because Tran had a very common practice of receiving scam reports and banning users who did not provide the actual refund services. (Doc. 286, at 37, 40-42.) So, the message did not indicate that Tran was working with Noir, and Tran also was not defending Noir when he responded, but merely repeating what Noir had said in response to the individual's complaint. (Doc. 286, at 38, 42.)

As to the separate message Tran had sent regarding wanting a "drop service," in which message Tran stated that he and Noir worked together, Tran said that he was simply trying to connect another Telegram user with the "drop service," and since it was Noir's referral, he just stated that directly. (See Doc. 286, at 18-19.) But, Tran noted, the message at issue did not indicate any type of business arrangement that he and Noir supposedly had. (Doc. 286, at 19.)

The government acknowledged that it did not have any chats or indeed "anything" that would indicate that Tran had given advice to Noir before January of 2022. (Doc. 286, at 35.) However, it continued to characterize the March 23, 2020 message to the individual who wanted a refund from Noir as offense conduct that purportedly showed Tran's affiliation with Noir dating back to that time. (See Doc. 286, at 36.)

The district court ultimately overruled Tran's objection as to the calculation of the loss amount because, it said, Tran was "acting as an admin with reasonably foreseeable knowledge that Noir [was] committing refund fraud" as early as March of 2020, and therefore, all loss after that was foreseeable. (See Doc. 286, at 44.)

The district court also overruled Tran's objection to the sophisticated-means enhancement, on the basis that (1) a substantial part of Noir's scheme was committed outside the United States and (2) Tran had used sophisticated means to execute and conceal the offense. (See Doc. 286, at 57-58.) The district court reasoned that the use of Telegram was a means that allowed a defendant to avoid detection or conceal the conduct. (Doc. 286, at 58.) The district court did not receive any evidence or testimony regarding Tran's use of Telegram; whether it was difficult to recover deleted messages off of Telegram; or whether Noir's organization was international in scope with members across the United States – instead, it merely asked the government if it had such evidence. (See Doc. 286, at 59-60.)

Finally, the district court overruled Tran's objection to the 10-plus victims enhancement. (Doc. 286, at 62.) During argument on this objection, Tran said that he knew what Noir was doing in general, but did not know that Noir was targeting more than ten companies. (Doc. 286, at 61.) Tran also explained that he could not reasonably foresee that Noir was targeting more than ten companies because, he said, "that is

actually a very high number in terms of a refund service," and it was "typically better" to only focus on a few companies. (Doc. 286, at 61-62.)

The district court then gave Tran credit for being a zero-point offender; gave Tran credit for acceptance of responsibility; and granted the government's motion for a 6-level downward departure pursuant to USSG § 5K1.1. (Doc. 286, at 62, 64-65.) This yielded an Offense Level of 16, a Criminal History category of I, and a guidelines range of 21 to 27 months. (Doc. 286, at 65.)

Tran's attorney asked the district court to consider Tran's physical problems when imposing sentence, and Tran spoke, indicating that he understood he had made a mistake but, at the time, he felt like he was doing it to help someone else. (See Doc. 286, at 66-67.) The district court sentenced Tran to 21 months, the low end of the calculated guidelines range. (Doc. 286, at 74.) It explained that, in its view, Tran had minimized his conduct, and that a sentence of 21 months was appropriate in light of the 18 U.S.C. § 3553(a) factors. (Doc. 286, at 70-71, 74.)

Judgment was formally entered on April 17, 2026. (Doc. 266.) Tran filed a timely appeal that same day. (Doc. 262.) **Tran is incarcerated pursuant to these proceedings.** See 11th Cir. R. 28-1(i).

## II. STATEMENT OF THE FACTS

Because this is a sentencing issue, the facts necessary to decide this appeal are already encompassed in the Course of the Proceedings, which is respectfully adopted by reference.

## III. STANDARD OF REVIEW

This Court follows a "two-step process" when reviewing a sentence. United States v. Trailer, 827 F.3d 933, 935 (11th Cir. 2016). First, this Court reviews the sentence for procedural reasonableness, determining "whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range ..., failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. at 936. A sentence is not procedurally reasonable if it is based on clearly erroneous factual findings. United States v. Barrington, 648 F.3d 1178, 1194 (11th Cir. 2011).

This Court reviews the district court's calculation of the loss amount and the number of victims for clear error. United States v. Ford, 784 F.3d 1386, 1396 (11th Cir. 2015) (loss amount); United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013). "Although review for

clear error is deferential, a finding of fact must be supported by substantial evidence." United States v. Martinez, 964 F.3d 1329, 1333 (11th Cir. 2020) (quoting United States v. Robertson, 493 F.3d 1322, 1330 (11th Cir. 2007)). In other words, the district court "may not speculate about the existence of a fact that would result in a higher sentence," but must only consider "reliable and specific evidence." Barrington, 648 F.3d at 1197.

That said, this Court's review is only for plain error when a procedural reasonableness issue is raised for the first time on appeal. United States v. Steiger, 107 F.4th 1315, 1320 (11th Cir. 2024). "To establish plain error, a defendant must show that there was an (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Utsick, 45 F.4th 1325, 1332 (11th Cir. 2022). "Where all three conditions are met, [this Court] may then exercise [its] discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

In the second step of the "two-step process," this Court reviews the substantive reasonableness of a sentence under a deferential abuse of discretion standard, asking whether the sentence is reasonable in light

of the totality of the circumstances. Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007). When deciding upon a sentence, the district court must evaluate all of the § 3553(a) factors but can attach "great weight" to one factor over others. United States v. Cubero, 754 F.3d 888, 892 (11th Cir. 2014).

A district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." United States v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015) (quotations omitted). "A district court commits a clear error of judgment when it weighs the § 3553(a) sentencing factors unreasonably." United States v. Butler, 39 F.4th 1349, 1355 (11th Cir. 2022). In slightly other words, this Court can vacate a sentence when it is "left with the definite and firm conviction … that the district court … [arrived at] a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Shaw, 560 F.3d 1230, 1238 (11th Cir. 2009) (citation omitted).

## SUMMARY OF THE ARGUMENT

Despite Tran having clearly challenged the loss amount and the number of victims detailed in the PSR, and despite the government not presenting any evidence or testimony in response, the district court overruled Tran's objections and accepted the accompanying enhancements in imposing Tran's sentence. The district court's failure to hold the government to its evidentiary burden and its reliance solely on the government's arguments at sentencing amounts to clear error. United States v. Owanikin, 769 F. App'x 896, 897 (11th Cir. 2019) (unpublished) (citing Rodriguez, 732 F.3d at 1305 and Robertson, 493 F.3d at 1330)). And, even if the district court properly considered the government's argument and the March 2020 chat messages upon which it relied in calculating the loss amount and total number of victims (which Tran maintains it should not have), the district court's conclusion that Tran was conspiring or affiliated with Noir in 2020 was not a proper inference from those messages, but was speculation at best.

While the district court may make a reasonable estimate of loss, and may make inferences based on circumstantial evidence, it "must not speculate concerning the existence of a fact which would permit a more

severe sentence under the guidelines." United States v. Bradley, 644 F.3d 1213, 1290 (11th Cir. 2011) (quotation marks omitted). Because the district court was speculating here, its sentence was procedurally unreasonable.

Still further yet, Tran's 21-month sentence is substantively unreasonable because it is greater than necessary to achieve the sentencing purposes identified in 18 U.S.C. § 3553(a). In imposing sentence, the district court focused solely on what it characterized as Tran's deflection of responsibility and his lack of a "full-throated" acknowledgement that he was committing crimes and helping Noir commit crimes. (See Doc. 286, at 78.) It made no reference to Tran's lack of criminal history, nor did it meaningfully address (other than at an unrecorded sidebar) Tran's substantial mitigating evidence including his problematic childhood and health issues. Nor did the district court correctly acknowledge the limited participation that Tran had with Noir. Given the circumstances, a sentence of 21 months lies outside the range of what could be considered a reasonable sentence.

## ARGUMENT

I. The district court erred by failing to take any evidence to establish the amount of loss and number of victims when those sentencing guidelines enhancements were in dispute and by drawing unsupported inferences from the arguments and representations presented to it.

This Court reviews the district court's calculation of the loss amount and the number of victims for clear error. Ford, 784 F.3d at 1396 (loss amount); Rodriguez, 732 F.3d at 1305. "Although review for clear error is deferential, a finding of fact must be supported by substantial evidence." Robertson, 493 F.3d at 1330 (emphasis supplied).[4]

[4] Arguably, whether Tran's sentence was procedurally unreasonable because the district court did not receive any evidence regarding the sentencing enhancements is subject to plain-error review at this point because the first part of Tran's argument regarding the lack of evidence was not raised by specific objection. See United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014) (reviewing for plain error because defendant did not raise specific objection to the district court's geographic limitation on sentence comparators). But, Tran has consistently argued that the sentencing enhancements were not warranted or supported. Thus, he should be found to have preserved all the procedural error issues he raises. However, even if any part of the district court's procedural error is evaluated under the higher "plain error" standard of review, this Court should nevertheless reverse because Tran's substantial rights were clearly affected. This is so because the necessity of requiring reliable evidence in support of the Government's conclusions is particularly manifest cases where the district court's factual findings can have a marked impact on the length of sentence. For example, in drug cases, the quantity of drugs attributed to a defendant can have a marked impact on length of sentence, see United States v. Lawrence, 47 F.3d 1559, 1567

This requirement is grounded in fundamental principles of due process, which place the burden on the government of proving every aggravating factor upon which a harsher sentence is based by a preponderance of the evidence that is both reliable and specific. See, e.g., Rodriguez, 732 F.3d at 1305 (district court clearly erred by applying enhancement for 50 victims when government only presented 42 victim affidavits and a summary chart not supported by any testimony); United States v. Washington, 714 F.3d 1358 (11th Cir. 2013) (district court erred by imposing enhancement for number of victims based solely on prosecutor's assertion and court's application of enhancement to co-defendants); United States v. Agis-Meza, 99 F.3d 1052, 1055 (11th Cir. 1996); United States v. Patrick, 983 F.2d 206, 208 (11th Cir. 1993).

Here, the district court improperly applied multiple sentencing enhancements when there was no evidence to support them. In this regard, Tran specifically challenged the loss amount and number of victims – based on the length of time in which he allegedly participated in the conspiracy – both orally and in writing. (See, e.g., Doc. 194, ¶¶ 1-

(11th Cir. 1995), and, analogously, here the sentencing calculations are primarily driven by loss attribution.

2, 5; Doc. 247, at 4; Doc. 286, at 20-22, 27-28, 34.) Tran also challenged the "sophisticated means" enhancement. (See Doc. 286, at 3.) The government then provided argument about how it had calculated the loss amount (Doc. 286, at 4-5), and it discussed three isolated Telegram messages from March of 2020 that it claimed indicated Tran's involvement in the conspiracy dating back to 2020 (Doc. 286, at 6, 10-11) as well as the two specific messages from 2022 regarding Apple and Samsung's fraud detection systems (Doc. 286, at 10-11). But, no evidence was presented on these points.

In regard to the number of victims, the government pointed to the plea agreement that contained language that Noir triggered "a large swath of companies" (see Doc. 179, at 5), and the fact that Noir's "order sheets" reflected more than ten victim companies, but again offered no evidence or testimony on these points. Finally, and similarly, as to the "sophisticated means" enhancement, the district court asked the government if it could produce evidence to support that enhancement, but did not require the government to do so. (See Doc. 286, at 59-60.)

So, despite Tran having clearly challenged the loss amount, the number of victims, and the alleged "sophisticated means" used in the

fraud, and despite the government presenting no evidence in response—much less the preponderance of "reliable and specific evidence" it is required to provide, Rodriguez, 732 F.3d at 1305—the district court accepted these issues as proven for purposes of enhancing Tran's sentence. This was clear error because "[i]t is the district court's duty to ensure that the Government carries [its] burden by presenting reliable and specific evidence." Lawrence, 47 F.3d at 1566. Tran's case mirrors cases where the district court did not properly discharge this duty.

For example, in Rodriguez, 732 F.3d at 1305–06, this Court remanded for re-sentencing with instructions to only impose a victim enhancement for the number of victims admitted by the defendant. In Washington, 714 F.3d 1358, this Court held imposition of an enhancement for more than 50 victims was error when the defendant pled guilty, there was no trial, and the government simply asserted there were more victims without ever presenting evidence. And, even more recently, in the unpublished case of Owanikin, 769 F. App'x at 897, this Court squarely held that "the district court erred by relying solely on the government's arguments at the sentencing hearing—rather than evidence—to resolve disputed facts."

Rodriguez is especially illustrative of why Tran is entitled to resentencing without application of the challenged enhancements. Rodriguez confirmed the principle that, although reliable hearsay can be considered during sentencing, absent a stipulation or agreement of the parties, an attorney's factual assertions alone do not constitute evidence that a District Court can rely on. Rodriguez, 732 F.3d at 1305 (citing Washington, 714 F.3d at 1361). In Rodriguez, the only evidence presented regarding the number of victims was a "summary chart" proffered by the government. But, as the Rodriguez court wrote:

> The prosecution presented no witnesses to authenticate what the chart represented, how it was prepared, or by whom. While the district court could consider trial evidence, there was no testimony or evidence tying the summary chart to any of the trial evidence either. Neither did the prosecution present any witnesses or evidence to verify that the information in the chart was correct. In essence, the summary chart amounted to little more than an allegation by the government on a piece of paper that Mr. Rodriguez's offense involved more than 50 victims.

Id. at 1305. Because none of this was "evidence," the sentencing court in Rodriguez erred by enhancing the defendant's sentence based on that enhancement. See also Washington, 714 F.3d at 1361 (representations by the government at sentencing that there were more than 250 victims were insufficient); Lawrence, 47 F.3d at 1568 (holding that "perfunctory

summaries of the evidence that the Government stood ready to present" were not evidence). In this case, indistinguishably from Rodriguez and Lawrence, the government set forth counsel's representations indicating certain "evidence" that it was ready to present, but it did not actually present that evidence. In turn, this means that the district court failed in its duty to ensure that the government carried its evidentiary burden, warranting vacating the sentence. See Owanikin, 769 F. App'x at 897; Rodriguez, 732 F.3d at 1305; Robertson, 493 F.3d at 1330.

Moreover, even if the district court properly considered the March 2020 chat messages upon which it relied heavily in determining that Tran was "acting as an admin with reasonably foreseeable knowledge that Noir [was] committing refund fraud" as early as March of 2020, and therefore, all loss after that was foreseeable (see Doc. 286, at 44), it exceeded its discretion in doing so. While the district court may make a reasonable estimate of loss, and may make inferences based on circumstantial evidence, it "must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." Bradley, 644 F.3d at 1290 (quotation marks omitted).

Here, as repeatedly pointed out by Tran, none of the March 2020 messages actually proved the conclusion that the district court reached. At most, prior to January of 2022, Tran was using his status as a "super admin" of multiple groups to leverage his own business with Radiant and to obtain "vouching" from other groups, but such activity did not represent any sort of partnership or business association with those other entities, including Noir. (See Doc. 286, 23-26.) As for the March 23, 2020 message from the individual that wanted to reach an "admin" of Noir, nothing in Tran's response to that individual indicated that he was associated with Noir; he merely received a potential scam complaint about Noir and forwarded Noir's response to the inquiring individual. (See Doc. 286, at 17, 37, 40-42.)

Importantly, it was in the "Anime Fan Club" chat in 2022 when Tran first provided Noir with any practical advice whatsoever. (See Doc. 286, at 27-28, 32-34; Doc. 264-2, at 1-2; Doc. 264-8, at 1-4.) Even the government acknowledged that it did not have any chats or indeed "anything" that would indicate that Tran had given advice to Noir before January of 2022. (Doc. 286, at 35.) Ultimately, then, the district court was simply speculating, both that there might be other (deleted) chats

that showed Tran's earlier involvement with Noir and that the March 2020 chats were evidence of Tran's earlier involvement with Noir.

Again, a district court does not have carte blanche in sentencing and is not "altogether unfettered in calculating the loss amount," United States v. Campbell, 765 F.3d 1291, 1301 (11th Cir. 2014), in that, among other things, it "must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." See United States v. Sepulveda, 115 F.3d 882, 890 (11th Cir. 1997) (government did not establish by a preponderance of the evidence that the amount of loss could reasonably be estimated at over $40,000.00 because its calculations contained admitted uncertainties and was inconclusive as to the appellants).

In turn, this Court will overturn a district court's loss calculation under the clear-error standard where it is left with a definite and firm conviction that a mistake has been committed." Campbell, 765 F.3d at 1302 (quotation marks omitted). This is precisely the conclusion this Court should reach in this case – the district court's calculation of the loss amount, number of victims, and the use of alleged "sophisticated means" was a clear error of judgment by the district court, both because

there was no evidence to support these enhancements and because the government's arguments and representations, even if properly considered by the district court, required the district court to speculate that Tran was complicit with Noir prior to 2022. Either way, the inferences drawn by the district court in applying the various enhancements to Tran's sentence were unsupported and constituted a clear error of judgment, meaning Tran's sentence should be vacated. See, e.g., Lawrence, 47 F.3d at 1568; Sepulveda, 115 F.3d at 890.

## II. The district court imposed a substantively unreasonable sentence that was greater than necessary to achieve the sentencing purposes identified in 18 U.S.C. § 3553(a).

Tran's sentence is also substantively unreasonable. This issue is evaluated under a deferential abuse-of-discretion standard. Gall, 552 U.S. at 51. A district court "imposes a substantively unreasonable sentence only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." Rosales-Bruno, 789 F.3d at 1256 (quotations omitted). "A district court commits a clear error of judgment

when it weighs the § 3553(a) sentencing factors unreasonably." Butler, 39 F.4th at 1355.

The district court must issue a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a)(2), which include the need for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, and protect the public from future criminal conduct. 18 U.S.C. § 3553(a)(2). In determining the appropriate sentence, the district court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant"; the guidelines range; the "kinds of sentences available"; "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and "the need to provide restitution." Id. § 3553(a)(1), (3)–(4), (6)–(7). This Court will vacate a sentence if, but only if, it is "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (quotations omitted).

Here, the limited scope of Tran's conduct, as supported by the plea agreement, and the mitigating aspects of his personal history, counsel in favor of a much lower sentence. For starters, Tran's contribution to Noir was occasionally offering advice or insights, and what he did offer was generally criticism of Noir and the business model. (Doc. 286, at 20-22, 32-34.) In fact, Tran's communications with the Noir conspiracy communication logs amounted to only 0.6% of the total message volume, and of those messages, some 85% were "casual banter, trading discussions, or meta-critiques." (Doc. 247, at 3.) He was a "peripheral critic" who was "entirely absent from the execution, logistics or sifting that defined the fraud." (Doc. 247, at 4.) And, as pointed out above, even the government acknowledged that it did not have any chats or indeed "anything" that would indicate that Tran had given advice to Noir before January of 2022. (Doc. 286, at 35.) Thus, when assessing "the nature and circumstances of the offense" under § 3553(a)(1), the district court should have focused on the offense that was admitted to – a small amount of modest and generalized posting in a Noir chat log.

Still further yet, Tran's history and characteristics also provide compelling reasons for leniency. Section 3553(a)(1) directs the Court to

consider the defendant's personal background, education, family circumstances, and other traits in determining an appropriate sentence. Here, Tran's life story is one that includes significant hardship and mitigating circumstances. Tran's father was abusive and withheld food from Tran. (PSR, ¶ 80.) Tran suffers from a genetic disorder that causes weak joints that limit his physical activity. (PSR, ¶ 84.) And, in regard to what led him to become involved in a fraudulent money-making scheme, Tran himself was a victim of manipulation by a woman he believed was a human-trafficking victim. (Doc. 286, at 13.) Tran knew that he had made a mistake in using illegal means to try to raise money, but, at the time, he felt like he was doing it to help someone else. (See Doc. 286, at 66-67.)

In imposing sentence, though, the district court focused solely on what it characterized as Tran's deflection of responsibility and his lack of a "full-throated" acknowledgement that he was committing crimes and helping Noir commit crimes. (See Doc. 286, at 78.) It made no reference to Tran's mitigating evidence of lack of criminal history, nor did it meaningfully address (other than at an unrecorded sidebar) Tran's problematic childhood and health issues. Nor did the district court

correctly acknowledge the limited participation that Tran had with Noir, focusing instead on its own perceived deficiencies in Tran's level of contrition.

Although a district court does not have to give all of the § 3553 factors equal weight, and need not necessarily discuss all mitigating evidence, see United States v. Amedeo, 487 F.3d 823, 833 (11th Cir. 2007), the district court here gave impermissibly short shrift to Tran's individualized characteristics as bearing on an appropriate sentence. In summary, considering the relevant factors under 18 U.S.C. § 3553(a), the district court overemphasized a single factor; failed to properly account for Tran's personal characteristics; and imposed an overall sentence that was greater than necessary to accomplish the purposes of sentencing. Therefore, this Court should vacate the judgment and sentence entered in this case and remand the case for a resentencing hearing as the sentence was unreasonable.

## CONCLUSION

Tran respectfully requests that the case be remanded for a new sentencing hearing as the sentence was unreasonable.

Respectfully submitted,

*/s/ Lisa M. Ivey*
Lisa M. Ivey (asb-2264-a36i)
Attorney for Defendant-Appellant

***OF COUNSEL:***
**STUBBS, SILLS & FRYE P.C.**
1724 South Quintard Avenue
Post Office Box 2023
Anniston, Alabama 36202
(256) 835-5050

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies under Fed. R. App. P. 32(g) that this brief complies with the volume limitations set forth in Fed. R. App. P. 32(a)(7)(B) and 11th Cir. R. 32-4. The brief contains 6,437 countable words. Century Schoolbook 14 is the style and type size used in this brief.

*/s/ Lisa M. Ivey*
Lisa M. Ivey (asb-2264-a36i)

## CERTIFICATE OF SERVICE

I certify that on September 23, 2026, the foregoing brief was filed electronically using this Court's CM/ECF system, which will provide notice of filing to all counsel of record. A true and correct copy was also served by either first-class United States mail or Federal Express overnight delivery, postage prepaid, on the following person:

CK Tran
Reg. No. 85957-510
FCI Fort Dix
Federal Correctional Institution
Post Office Box 2000
Joint Base MDL, New Jersey 08640

*/s/ Lisa M. Ivey*
Lisa M. Ivey (asb-2264-a36i)